773 S.E.2d 361

**C.R. MEYER AND SONS COMPANY, Plaintiff,**

v.

**CUSTOM MECHANICAL CSRA, LLC, Respondent.**

and

**Custom Mechanical CSRA, LLC, Third–Party Plaintiff, Respondent,**

v.

Plumbers & Steam Fitters Local # 150 Health and Welfare Fund, Plumbers & Steam Fitters Local # 150 Pension Fund, Plumbers & Steam Fitters Local # 150 Annuity Fund, and Jackie K. Nordeen, Jr. and Patrick H.F. Smith, IV, as Trustees of these Funds; Plumbers & Steam Fitters Local # 150 Vacation Fund and Patrick H.F. Smith, IV, and Joseph L. Dozier, as Trustees of this Fund; Augusta Joint Apprenticeship and Journeyman Training Committee and Patrick H.F. Smith, IV and Charles I. Hardigree, as Trustees of this Fund; Trustees of Southeastern Iron Workers Healthcare Plan; Trustees of Southeastern Iron Workers Annuity Plan; Trustees of Iron Workers # 709 Joint Apprenticeship and Training Committee and Local # 709, International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers; Southeastern Carpenters and Millwrights Health Trust; Southeastern Carpenters and Millwrights Pension Trust; Larry Phillips and J. Kirk Malone, as Trustees of these Funds; Presidential Financial Corporation; Norton Welding Supply, Inc.; Daniel R. Friedmann; Tony Hall; Timothy R. Hall, Jr.; Ralph D. Black; Thomas Brittingham;

Arthur C. Carlson; Leonard Wade Cliett; Christopher Culli-pher; David W. Cullipher; Joseph A. Doyle, Jr.; Charles R. Ellzey; Brian Field; Clayton W. Googe, Jr.; Martin Granger; William R. Griffin, Jr.; Jack E. Hegler; George G. Lever; Matt Lever; Ernest H. Lewis, III; Estate of William R. McFerrin by and through its duly-appointed Executrix, Nancy McFerrin; Daniel Nichols; Kinda Phormmachanh; Raleigh B. Roye; Nicholas Stewart; Timothy P. Stock; James Waltemath; Al Tiska; Al Carpenter; Bruce Pollock, Jr.; Security Federal Bank; Joseph A. Doyle, Jr.; Brian Field; and Leonard Wade Cliett; Third–Party Defendants,

Of whom Daniel R. Friedmann; Tony Hall; Timothy R. Hall, Jr.; Ralph D. Black; Thomas Brittingham; Arthur C. Carlson; Leonard Wade Cliett; Christopher Cullipher; David W. Culli-pher; Joseph A. Doyle, Jr.; Charles R. Ellzey; Brian Field; Clayton W. Googe, Jr.; Martin Granger; William R. Griffin, Jr.; Jack E. Hegler; George G. Lever; Matt Lever; Ernest H. Lewis, III; Estate of William R. McFerrin by and through its duly-appointed Executrix, Nancy McFerrin; Daniel Nichols; Kinda Phormmachanh; Raleigh B. Roye; Nicholas Stewart; Timothy P. Stock; James Waltemath; Al Tiska; Al Carpenter; and Bruce Pollock, Jr. are the Appellants,

And Presidential Financial Corporation and Security
Federal Bank are Respondents.

Appellate Case No. 2013–001839.
No. 5319.

Court of Appeals of South Carolina.

Heard March 12, 2015.
Decided June 10, 2015.

John S. Nichols, Bluestein Nichols Thompson & Delgado, LLC and Nekki Shutt, Callison Tighe & Robinson, LLC, both of Columbia, for appellants.

Curtis Lyman Ott, Lindsay Anne Joyner, and John Thomas Lay, Jr., Gallivan, White & Boyd, PA, all of Columbia, for Respondent Presidential Financial Corporation; and Robert L. Buchanan, Jr., Buchanan Law Office, PA, of Aiken, for Respondent Security Federal Bank.

FEW, C.J.

This appeal involves section 29–7–10 of the South Carolina Code (2007), and whether the section created a first lien on money paid to a contractor when (1) the laborers claiming the lien did not work for the contractor, but for its subcontractor, and (2) the funds to which the lien would attach were held in escrow by court order instead of paid directly to the contractor. A special referee granted summary judgment based on a finding that the section did not create a lien under these circumstances. We reverse and remand for trial.

## I. Facts and Procedural History

C.R. Meyer and Sons Company served as the general contractor for the construction of a toilet paper-making machine at the Kimberly Clark facility in Beech Island, South Carolina. C.R. Meyer subcontracted with Custom Mechanical, CSRA, LLC to install industrial piping. Custom Mechanical borrowed money from Presidential Financial Corporation and Security Federal Bank ("the lenders") to fund its work, and the lenders perfected security interests in Custom Mechanical's accounts receivable.

Custom Mechanical obtained labor for its work through its wholly-owned subsidiary, Custom Industrial Services, LLC. Custom Industrial and a labor union established a plan through which employees could elect to have a percentage of their wages withheld by Custom Industrial, which would be set aside in the union's vacation fund and paid to the employees twice a year.

C.R. Meyer suspended Custom Mechanical's work at the Kimberly Clark facility after a dispute arose, and Custom Industrial stopped making payments to the vacation fund. C.R. Meyer and Custom Mechanical arbitrated Custom Mechanical's claim that C.R. Meyer breached contracts between them, and an arbitration panel awarded Custom Mechanical $1,976,548.

C.R. Meyer filed an action against Custom Mechanical in circuit court challenging the arbitration award. Custom Mechanical filed a third-party complaint against its creditors, including the lenders and twenty-nine employees who participated in the vacation fund ("the employees"). After the circuit court confirmed the arbitration award, C.R. Meyer and Custom Mechanical reached a settlement. The settlement provided the circuit court would order C.R. Meyer to pay $1.8 million from the arbitration award into Custom Mechanical's attorneys' trust account pending the court's determination of the creditors' priorities.

The lenders and the employees answered Custom Mechanical's third-party complaint and asserted security interests in the arbitration award proceeds. The lenders sought a declaratory judgment that their security interests had "priority over all other alleged liens held by" Custom Mechanical's creditors.

The employees asserted a "first lien" priority to the funds under section 29-7-10.

The case was referred to a special referee, who ordered all but $325,000 be disbursed to the lenders from the escrow account. The lenders and the employees filed cross-motions for summary judgment, each claiming priority to the remaining $325,000. The special referee granted the lenders' motion for summary judgment, finding the employees were not entitled to a first lien under section 29-7-10.

## II. Summary Judgment

The employees argue the special referee erred in granting summary judgment to the lenders. We agree. *See* Rule 56(c), SCRCP (stating the trial court shall grant summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law"); *Alltel Commc'ns, Inc. v. S.C. Dep't of Revenue,* 399 S.C. 313, 316, 731 S.E.2d 869, 870 (2012) ("The question of statutory interpretation is one of law for the court to decide.").

### A. "Laborers" Under Section 29-7-10

■ Section 29-7-10 provides (1) "Any contractor . . . shall pay all laborers . . . for their lawful services . . . out of the money received for the erection . . . of buildings upon which such laborers . . . are employed or interested," and (2) "such laborers . . . shall have a first lien on the money received by such contractor." § 29-7-10. The special referee correctly determined the employees were "laborers" under the section. However, the special referee found the employees were not entitled to a first lien because they "were employed by Custom Industrial and not by Custom Mechanical." We disagree that the specific identity of the employer makes any difference.

■ The statute requires that a contractor "shall pay all laborers . . . for their lawful services" when the laborer is "employed or interested" in the project. *Id.* These employees were "employed" and "interested" in the work at the Kimberly Clark facility as "laborers" providing "lawful services." When such a laborer has a claim for the contractor's failure to pay, the lien attaches, pending resolution of the claim. *Id.* We find

section 29–7–10 does not require "laborers" to be directly employed by the contractor who receives the money in order for them to be entitled to a first lien. We interpret section 29–7–10 as establishing a first lien in favor of "laborers" who worked on "the erection . . . of buildings" regardless of their specific employer.

### B. "Money Received by" Custom Mechanical

■ The special referee also determined the employees were not entitled to a first lien because "[n]o money has come into the hands of Custom Mechanical." In reaching this determination, the special referee interpreted section 29–7–10 to require the contractor to actually receive the funds before a lien could attach under the section.

We find the employees are not prohibited from establishing a first lien on Custom Mechanical's arbitration award merely because the $325,000 balance remains in Custom Mechanical's attorneys' trust account pursuant to a court order. The circuit court ordered "C.R. Meyer will pay the sum of [$1.8 million] to Custom [Mechanical]" and the funds must be held in the lawyers' trust account. The court also gave Custom Mechanical the right "to assert any priority to the funds." The court's order demonstrates Custom Mechanical retained ownership of the funds even though the funds were held "pending resolution of any claims asserted by [Custom Mechanical's creditors]" because they could only "be disbursed pursuant to further Order of the Court." Thus, the funds in the escrow account were owned by Custom Mechanical and were held for its benefit—to pay its creditors—upon court order.

The special referee relied on *Morgan & Austin v. D.W. Alderman & Sons' Co.*, 70 S.C. 462, 50 S.E. 26 (1905), in which our supreme court first interpreted the predecessor to section 29–7–10.[1] We find the special referee's reliance on *Morgan &*

1. The predecessor statute was identical in application. It read, "It shall be the duty of any contractor . . . to pay all laborers . . . for their lawful services . . . out of the money received for the erection . . . of buildings upon which said laborers . . . are employed or interested, and said laborers . . . shall have a first lien on the money received by said contractor . . . in proportion to the amount of their respective claims." *See* 70 S.C. at 463–64, 50 S.E. at 26 (quoting statute).

*Austin* to be misplaced. In that case, Morgan & Austin supplied materials for a builder, and when the builder did not pay, Morgan & Austin filed suit to enforce a lien under the section. 70 S.C. at 462–64, 50 S.E. at 26. This lien was enforced against funds attached by the sheriff from a debt owed to an individual partner of the builder's company. 70 S.C. at 462–63, 50 S.E. at 26. The supreme court held the section did not apply because the funds belonged to the individual partner, not the partnership—which was the entity that failed to pay Morgan & Austin. 70 S.C. at 465, 50 S.E. at 27. Thus, because "the money [was not] in the hands of the [builder]," but in the hands of its partner—a separate legal entity—Morgan & Austin had no lien under the statute. *Id.*

The situation here is different. The court ordered C.R. Meyer pay the money to Custom Mechanical, but that it be held by its attorneys. The fact that the circuit court ordered the funds be placed in the lawyers' trust account did not change the ownership of those funds. The lien attached once Custom Mechanical's attorneys received the funds on its behalf, and section 29–7–10 gave the lien first priority.

To interpret section 29–7–10 differently would defeat the purpose of the statute. The arbitration panel made its award based on a finding that C.R. Meyer owed Custom Mechanical money. When C.R. Meyer paid the arbitration award, the funds were owned by Custom Mechanical. However, the funds were insufficient to cover all of Custom Mechanical's secured obligations, so the circuit court entered the escrow order to preserve them until the dispute could be resolved as to how the funds would be allocated among Custom Mechanical's creditors. Under the special referee's interpretation of section 29–7–10, the court's action to *protect* the funds for Custom Mechanical's creditors—including the employees— would actually *defeat* the employees' otherwise valid lien. The special referee's interpretation creates a situation in which a competing creditor with a lien second in priority could make itself a first priority lienholder simply by bringing an action to place the funds in the hands of an escrow agent. Then, because the owner of the funds—here, Custom Mechanical— did not physically "receive" the funds, the second priority lien would become a first priority lien. Such a result would allow a contractor's creditors to prevent the establishment of section

29–7–10's first lien for the contractor's "laborers" by winning a race to the courthouse. We hold the Legislature did not intend the creation of a lien under section 29–7–10 to turn on how the contractor "received" the funds—whether physically, in its own bank account, or in the account of an escrow agent. *See Poinsett Constr. Co. v. Fischer,* 301 S.C. 343, 344–45, 391 S.E.2d 875, 876 (Ct.App.1990) ("When the Legislature provided that the lien granted [under section 29–7–10] is a first lien, we must conclude that the Legislature meant what it said.").

## C. The Union's Claim

■ Finally, the special referee determined the employees did "not have an independent claim" to the unpaid vacation funds because the union brought a claim for the funds that had "already been litigated and resolved." [2] We find the special referee erred. As the parties acknowledged at oral argument, each employee had a direct contractual right to receive the vacation funds. Therefore, the employees have independent claims regarding their entitlement to the funds regardless of whether the union also brought a claim.

## III. Conclusion

We express no opinion as to the validity of the employees' claims. We merely find the special referee erred in granting summary judgment to the lenders as to the existence of the employees' lien under section 29–7–10.[3] The order of the special referee is **REVERSED** and the case is **REMANDED** for trial.

HUFF and WILLIAMS, JJ., concur.

---

**2.** In 2007, the union obtained a default judgment against Custom Industrial in federal court.

**3.** Our ruling makes it unnecessary to address issue II. We also find it unnecessary to address issue III as that is an issue the trial court must resolve on remand.